1  Clayeo C. Arnold, SBN 65070
   JOSHUA H. WATSON, SBN 238058
2  CLAYEO C. ARNOLD, PC
   865 Howe Avenue
3  Sacramento, CA 95825
   Telephone: (916) 777-7777
4  Facsimile: (916) 924-1829
   Email: jwatson@justice4you.com
5
   Attorneys for Plaintiff
6  *DAPHNIE JORDAN*

7                    **UNITED STATES DISTRICT COURT**

8                    **EASTERN DISTRICT OF CALIFORNIA**

9
   DAPHNIE JORDAN                          Case No.: 2:22-cv-00540-DJC-KJN
10
            Plaintiff,                     **PLAINTIFF'S MEMORANDUM IN
11                                         SUPPORT OF MOTION TO APPROVE
   vs.                                     SETTLEMENT AND DISMISS THIS
12                                         MATTER WITH PREJUDICE**
   NOR-CAL PIPELINE SERVICES
13
            Defendants.
14                                         Date:        July 6, 2023
                                           Time:        1:30 p.m.
15                                         Courtroom:   10, 13th Floor

16                                         *Assigned to Hon. Daniel J. Calabretta,
                                           U.S. District Court Judge*
17

18

19

20

21

22

23

24

25

26

27

28
                                        1
   PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT
                AND DISMISS THIS MATTER WITH PREJUDICE

I.      **INTRODUCTION**

The Complaint on behalf of Plaintiff DAPHNIE JORDAN asserts claims pursuant to the

U.S. Equal Pay Act and the California state law analog.  The federal statute prohibits the practice

of discriminating on the basis of sex with respect to wages.  The related state statute expands the

protected classes to include, among other things, race.  The parties have settled the case in

principle, and requested via stipulation that the Court approve the settlement. The Court ordered

that a motion with more information be filed.


II.      **FLSA LEGAL STANDARDS CONCERNING SETTLEMENT**

The U.S. Equal Pay Act ("EPA") prohibits paying different wages to employees doing

essentially the same job based on the employees' sex.  29 USC § 206(d).  EPA was codified

within the older then-existing framework of the U.S. Fair Labor Standards Act ("FLSA").  The

prohibition against sex-discrimination in wages constitutes a violation of FLSA's minimum

wage rules in §206.  In this way, violation of EPA gives rise to the same remedies as any other

minimum wage violation.  29 USC §216(b).

Settlements of FLSA claims are subject to court review.  As Chief Judge Kimberly J.

Mueller previously summarized:

> Congress's purpose in enacting the FLSA was to protect workers from
> substandard wages and oppressive working hours. *Barrentine v. Arkansas–Best
> Freight System*, 450 U.S. 728, 739 (1981) ). "Because an employee cannot waive
> claims under the FLSA, [the claims] may not be settled without supervision of
> either the Secretary of Labor or a district court." *Beidleman v. City of Modesto*,
> No. 116-cv-01100-DAD-SKO, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13,
> 2018) (citing *Barrentine*, 450 U.S. at 740). A court may not approve a FLSA
> settlement without determining whether it is "a fair and reasonable resolution of a
> bona fide dispute." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal.
> 2014) (citation omitted); see also *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC),
> 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010) ("Courts approve FLSA
> settlements when they are reached as a result of contested litigation to resolve
> bona fide disputes.") (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d
> 1350, 1353 n.8 (11th Cir. 1982) ). Additionally, "[a]s part of the inquiry to
> determine whether a FLSA settlement is fair, a district court 'must consider the
> proposed service payments to the named plaintiff and the attorneys' fees.' "
> *Fontes v. Drywood Plus, Inc.*, No. CV-13-1901-PHX-LOA, 2013 WL 6228652, at
> *6 (D. Ariz. Dec. 2, 2013) (internal quotation marks and citation omitted).

\*\*\*

2

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT
AND DISMISS THIS MATTER WITH PREJUDICE

"A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016)* (internal quotation marks and citation omitted). When there is certainty that the FLSA entitled plaintiffs to the compensation they seek, a court will not approve a settlement, because it would shield employers from the full cost of complying with the statute. Id. (citation omitted).

                            ***
To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the FLSA framework. *Selk*, 159 F. Supp. 3d at 1173. The court must consider the following factors when determining whether a settlement is fair and reasonable under the FLSA:  (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Valentine v. Sacramento Metropolitan Fire District* (E.D. Cal., Feb. 15, 2019, No. 217CV00827KJMEFB) 2019 WL 651654, at *2.

As is true of the above summary, most case authority addressing FLSA approval occurs in the context of collective litigation.  The rules requiring court approval are judicially inferred, and not expressly written into the statutory text of FLSA or EPA.  Some courts have questioned whether FLSA settlements (especially individual non-collective ones) require court approval.  In *Alcantara v. Duran Landscaping*, Case No. 2:21-cv-03947-JDW (ECF No. 21, 07/12/22), Judge Wolson of the U.S. District Court for the Eastern District of Pennsylvania reviewed the text of FLSA and related decisions.  He concluded FLSA parties may settle cases without court approval, though doing so may leave an employer exposed for subsequent claims.  *Id.* at 10 ["These decisions hold only that if an employer settles an FLSA case without DOL or court approval, it runs the risk that a judge might hold some or all of the release invalid. But it's one thing to say certain settlements are, or might be, unenforceable. It is something else to say that once a party brings an FLSA suit, the FLSA bars them from taking the risk that their settlement will be unenforceable."]  (Available via PACER and at https://www.govinfo.gov/content/pkg/USCOURTS-paed-2_21-cv-03947/pdf/USCOURTS-paed-2_21-cv-03947-0.pdf)  Judge Wolson noted that the parties may always ask for court approval, as they have in this matter.

3

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT
AND DISMISS THIS MATTER WITH PREJUDICE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.    DISCUSSION OF CLAMS AND THE SETTLEMENT**

**A.    A Bona Fide Dispute Exists and Favors Defendant**

As this Court has noted, *supra*, a *bona fide* dispute exits when there are legitimate questions about the existence and extent of Defendant's FLSA liability.  Here, Plaintiff asserts in her EPA count that Defendant paid her less than others because of her sex.  She separately alleges retaliation in the form of wrongful termination.

As explained by the Ninth Circuit:

The Equal Pay Act mandates that

No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earning by quantity or quality of production; or (iv) a differential based on any other factor than sex. 29 U.S.C. § 206(d)(1).

In an Equal Pay Act case, the plaintiff has the burden of establishing a prima facie case of discrimination by showing that employees of the opposite sex were paid different wages for equal work." *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1073–74 (9th Cir. 1999). To make this showing, the plaintiff must demonstrate *1220 that the jobs being compared—not "the individuals who hold the jobs"—are "substantially equal." *Id*. at 1074. "Substantially equal" does not necessarily mean "identical." *See Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1414 (9th Cir. 1988) (quotation marks and citations omitted); *cf. Hein v. Or. Coll. of Educ.*, 718 F.2d 910, 917 (9th Cir. 1983) (reasoning that if a claim could be defeated by showing that the plaintiff had additional duties, employers could easily subvert the intent of the Equal Pay Act). Instead, "the crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks." *Stanley*, 178 F.3d at 1074 (quoting *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 156 (3d Cir. 1985)). Once a plaintiff establishes a common core of tasks, "the court must then determine whether any additional tasks, incumbent on one job but not the other, make the two jobs 'substantially different.' " *Id.* (quoting *Brobst*, 761 F.2d at 156). "The question of whether two jobs are substantially equal is one that must be decided on a case-by-case basis." *Hein*, 718 F.2d at 913.

*Freyd v. University of Oregon* (9th Cir. 2021) 990 F.3d 1211, 1219–1220.

Plaintiff was employed by Defendant as a payroll processing clerk in the context of unionized workplace engaged in public works projects.  Plaintiff worked in "certified payroll,"

4

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AND DISMISS THIS MATTER WITH PREJUDICE

1    which requires a submission of diversity and pay scale data to government agencies in the

2    context of public works.  There is a common core of tasks for payroll processing employees,

3    with certified payroll employees having additional data entry tasks related to reporting.  The U.S.

4    Bureau of Labor Statistics publishes only one category of payroll clerks, suggesting that there is

5    only one common-core, rather than there being a separate core/class for certified payroll clerks.

6    *See,* Watson Declaration, para 5.

7            There is only one male comparator available to evaluate the EPA/FLSA claim.  The male

8    comparator is identified as "Frank."  The other similarly situated employees are all female, as is

9    Plaintiff.  *See,* Watson Declaration at para 10.  Analysis of the EPA claim requires consideration

10   of Frank's pay rate, and whether it is higher than Plaintiff's.  It also requires consideration of

11   other female employees.

12           Frank was paid more than Plaintiff.  However, Defendant produced information about

13   Frank indicating his higher rate of pay is not due to sex.  Important information provided by

14   Defendant included the following:

15           1)  Frank was not employed during the same time as Plaintiff.

16           2)  Frank was not employed in the same geographic area as Plaintiff.  His

17               employment was based in the San Francisco Bay Area whereas Plaintiff was

18               based in West Sacramento.  There are differences in the costs of living

19               between the markets, which led Defendant to pay more to Frank.

20           3)  Frank had additional certifications and industry-specific experience that

21               Plaintiff did not have.  He also is reported to have additional job duties.

22           Defendant essentially argued that Frank was paid more because he lived in a more

23   expensive area and had special skills and experience of value, justifying the pay differential

24   under 29 U.S.C. § 206(d)(1)(iv) ["a differential based on any other factor than sex."]  This is

25   somewhat of a catch-all reason/excuse for a pay differential that may warrant some skepticism.

26           However, Defendant hired other female employees doing substantially similar work.  All

27   of the other female employees were also paid more than Plaintiff.  For example, "Kay" worked

28
                                              5
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT
AND DISMISS THIS MATTER WITH PREJUDICE

1 for Defendant at the same time as Defendant and was paid more than Plaintiff. Kay is Black and

2 female, undercutting allegations of sexism and racism. "Jay" was hired after Plaintiff's

3 employment ended. Jay is female and Asian. She was also paid more than Plaintiff,

4 undercutting allegations of sexism. Defendant contends that Frank, Kay, and Jay were better

5 qualified for the position and were compensated accordingly. Watson Declaration, paras 10-11.

6 Defendant also employed three other women, all of whom were paid more than Plaintiff

7 ("Maria," "Teresa," and "Melissa." Watson Declaration, para 10.)

8        For EPA/FLSA purposes, this leaves Plaintiff in the position of being the lowest paid of a

9 group seven employees. Of those, six were women. Defendant claims that Plaintiff was paid the

10 least based on a factor other than her sex. As a whole, the profile of the comparators supports

11 Defendants' account. Although Plaintiff was paid less than the only male, the fact that she was

12 also paid less than the other women supports Defendant's position that the pay differential was

13 "based on [a] other factor than sex."]

14        The state law claims for race-based pay differential are not subject to the Court's

15 approval process. However, Plaintiff's counsel does take note of the fact that Defendant was

16 able to produce a higher paid comparator who is both Black and female.

17        As for retaliation, Defendant contended that Plaintiff made certain errors in her work that

18 cost the company money. These errors reportedly form the basis of termination. While Plaintiff

19 does have a response to these issues, the response has to do with nuances of attributing fault and

20 assessing the impact. They do not address whether the specified issues occurred. Watson

21 Declaration, paras 12-14. This sets up a discussion of pretext vs independent basis for

22 termination. The business judgment rule looms over discussions since employers are not

23 charged with making wise employment decisions so long as decisions to terminate are not based

24 on improper animus. *See, e.g., Selenke v. Medical Imaging of Colorado,* 248 F.3d 1249, 1261

25 (10th Cir. 2001) (juries may not second-guess the business judgment of the employer or question

26 whether the decision was wise, fair or even correct).

27

28

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT
AND DISMISS THIS MATTER WITH PREJUDICE

As the above demonstrates, there is a *bona fide* dispute as to liability in this matter, both as to the EPA pay-rate claims and the EPA retaliation/wrongful termination claim.  The available facts are stronger for the defense than the Plaintiff, justifying the $4,000 settlement value.

**B.      The Settlement is Fair and Reasonable**

The Ninth Circuit's six factors for evaluating settlement support the settlement in this matter.

*Factor (1): The plaintiff's range of possible recovery.*

If Plaintiff prevailed on every point of her EPA pay-rate claim, her maximum recovery on that claim would be about $10,757, plus attorney fees and costs.  If state law claims are also included, the total reaches $27,280.  Watson Declaration, para 16.

If Plaintiff prevailed on every point of her retaliation claim she could conceivably recover for a period of unemployment.  Plaintiff thereafter moved out of state to an area paying less California due to regional costs of living.

*Factor (2): The stage of proceedings and amount of discovery completed.*

Investigation and evaluation of this matter benefitted from other litigation counsel had engaged in with the same defendant such that counsel already knew the structure and many details of the inner workings of Defendant.  Watson Declaration 7.  Counsel also obtained Plaintiff's human resources and payroll records in the administrative law proceeding that preceded this civil action.  Counsel for both sides exchanged information to provide for appropriate evaluation of claims and defenses.  Watson Declaration.

*Factor (3): The seriousness of the litigation risks faced by the parties.*

It would be difficult to overstate Plaintiff's litigation risk if she were to continue litigation.  The available information indicates that similarly situated women and women of color were paid more than she was, and that her termination was not related to complaints about her payrate.  To the contrary, she was provided raises on three separate occasions.  Defendant's conduct around this time included terminating a key employee who behaved improperly as to race and sex in unrelated circumstances.  Defendant can also point to a performance issue to

7

1    invoke the business judgment rule as to the basis of Plaintiff's termination.  All in all, this is one

2    of those cases where a plaintiff's attorney files a case believed to be legitimate at the outset, but

3    then must accept the facts as they are and do what can be done to assist a client in ending a case

4    as positively as possible.  *See,* Watson Declaration, para 13.

5            *Factor (4): The scope of any release provision in the settlement agreement.*

6            Plaintiff releases only her own claims in this matter.  There is no collective.

7            *Factor (5): The experience and views of counsel and the opinion of participating*

8    *plaintiffs.*

9            Plaintiff's counsel is appropriately experienced to handle this litigation.  Plaintiff signed a

10    settlement agreement that is contingent on the court granting approval.  Watson Declaration, para

11    15,17-18.

12            *Factor (6) The possibility of fraud or collusion.*

13            This matter was resolved through an arms-length negotiation between counsel following

14    an appropriate exchange of information. The settlement value is driven by the available

15    information supporting the parties and nothing else.

16

17    **IV.    CONCLUSION**

18            For the reasons stated above, Plaintiff requests that the Court approve the settlement and

19    dismiss this matter with prejudice.

20    Respectfully submitted,

21    Dated: May 10, 2023                          CLAYEO C. ARNOLD, PC

22                                                 By: /s/ Joshua H. Watson
                                                     Joshua H. Watson
23                                                   Attorneys for Plaintiff

24

25

26

27

28
                                              8
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT
AND DISMISS THIS MATTER WITH PREJUDICE